Good afternoon, Illinois appellate court, first district court is now in session. The 6th division, the Honorable Justice Michael B. Hyman presiding, case number 22-1282, People v. Musab Afandi. Good afternoon. Good afternoon. I apologize for the delay. No, that's fine. This is Justice Michael Hyman. Thank you. It is Justice Carol Walker, also with us as Justice and our presiding Justice Sharon Johnson, who also has difficulties with her internet. So she is on, she is listening, but she won't be able to speak, but she can hear you. So this is a day of technical difficulties. Hopefully we're over that. So, each of you have 20 minutes and as Rubio, you can reserve time for rebuttal. So please let me know how much time you want for your rebuttal. Just a minute or 2, if necessary. Okay. That's fine. Any questions either side to begin with that? Please proceed. Okay. Thank you. Good afternoon. Your honor and my name is Pamela Rubio with the office of the State Appellate Defender's Office and I represent Musab Afandi on appeal. Musab Afandi raised a single legal issue in this case, that the prosecutor's closing argument cumulatively undermine the integrity and reputation of the judicial process requiring a new trial. So, Ms. Rubio, why don't you tell us right away, why is it not forfeited? Forfeiture doesn't apply because we're asking this court to look at this issue under the second prong of plain error, because it affected a substantial right and also because it constitutes structural error. Under the second prong of plain error, the fact that an issue wasn't raised below is not detrimental to the issue on appeal. I understand that, but in the state's brief on page 24, they begin by saying that the defendant has forfeited each of these claims because he neither objected to the prosecutor's remarks, which is true, and says, nor raise the claims in his post trial motion. Is that true or false? That is true. He did not raise it? I thought, was there a post trial motion? There was a post trial motion. I think it was, I have a copy of it. It was more general. Your brief says that counsel filed a motion for a new trial, arguing, among other things, that Althandi's due process and equal protection rights were violated, and that the verdict was a result of passion, bias, and prejudice. That is true, but these specific arguments were not raised in the motion for the trial. My position is that regardless of whether these specific issues were raised in the motion for the trial, this court should still address the issues and still find that this error constituted structural error requiring reversal. There are many cases that the courts will review issues like these under the second problem of plain error because they haven't been preserved below. The prosecutor committed this misconduct and engaged in structural error, resulting in reversal or requiring reversal in three ways. First, the prosecutor improperly commented on the reasonable doubt standard. Second, the prosecutor argued facts not in evidence. And third, the prosecutor made comments that could tend to elicit a prejudice against Mr. Althandi based on his ethnicity and nationality. Ms. Rubio, why don't you go ahead and jump to your third argument, your third point here. Sure. The prosecutor made comments in rebuttal closing about Mr. Althandi's immigration to the U.S. that tended to evoke stereotypes about Middle Eastern men. The prosecutor, specifically on page 309 of the record, argued the defendant got on the witness stand, and I don't know what that was, but I think he testified. He said some things. It was hogwash. He came to this country to rape women. He came to this country for you and for the judge, and then he took that oath and he desecrated it. The state admits in its brief that these comments were made sarcastically, but they were more than just sarcastic. Let's just stop right there. You don't agree it was sarcastic from your brief. I don't disagree that they were sarcastic. Even if they were, my point is that they're not merely sarcastic. My point is that... What is sarcasm? I don't know the Webster's Dictionary of sarcasm, but I think it's to kind of poke fun or be... Yeah, I guess poke fun of something in a critical way. Are you saying that if this was sarcasm, then it's okay? Is that what you're hearing? No, I think the state's position is that sarcasm is allowed in a trial. But I can cite some cases in my reply brief stating that there's no place for sarcasm in the court. But even if this was mere sarcasm, if that's how the court would like to find it, it was more than sarcasm. Because what this did is undermine the integrity of the judicial process in three ways. Let me just go back to sarcasm. Sure. I looked it up in several dictionaries, and they all have the same definition. So it doesn't matter what dictionary we use. And it means the opposite of what you say in order to hurt someone's feelings or to humorously criticize something. That's called sarcasm. Okay. Do you think that this is sarcasm under that definition? No, not under that definition. It could be something else, but it definitely was an attempt at humor. No, I don't think it was an attempt at humor. I think it was an attempt to ridicule Mr. Afandi. And that's the first reason why this comment was improper, because the prosecutor's initial statement in this paragraph of the closing argument related to not being able to understand Mr. Afandi said maybe he testified, maybe he didn't. I don't know what that was. I think that that was not sarcasm under the definition that you just read, but I think it was ridicule. And I think this comment has to be taken in context. From the beginning of this trial, all the parties were aware that Mr. Afandi was going to be testifying with an interpreter. And even prior to trial during Bardeer, the court knew that this could be a potential triggering point for prejudice, because the judge asked during Bardeer if the jurors would hold the fact that he needed a foreign interpreter against him. And the jury answered no, but it goes to show that this was like a prevalent fact from the beginning of trial. And then he used an Arabic interpreter throughout the trial. Even the complaining witnesses testified about his thick accent. So these comments that the prosecutor made should be reviewed in context. When you say, let's break it down. What you read as to what the prosecutor said contained several statements. The first statement had to do with, as you interpreted it, whether he could be understood. Yes. Okay. But the statement went on and said that he's a serial rapist. Correct. It is who he is. It is what he does. He raped women. And then it goes on to say that he came to this country to rape women. He came to this country for you and for the judge, and then he took that oath and he desecrated. Did you interpret the whole thing as sarcasm, or are you just saying that the first part is sarcasm, the last part has nothing to do with sarcasm? I'm trying to understand. I guess under the definition of sarcasm that you described, I would concede that this isn't sarcasm. I think that it was, like I said earlier, ridiculing him for not being able to speak the English language and also referring to his immigration status, his national origin. And alluding to some stereotypes that are prevalent against Middle Eastern men. I think that the comments that the prosecutor made relating to the desecration of the oath shows that there's sort of a sacrilegious connotation to that. What oath are we talking about? Well, this comment could be interpreted one of two ways. Either the oath on the stand or the oath that Mr. Afandi took when he came to this country and became a U.S. citizen. Given the context, I think it could be interpreted both ways. But either way, it's inappropriate. I think the word desecrate is a very charged word. And in the context of these statements, alludes to a sacrilegious kind of feel to it. Desecrate is defined as defiling a sacred thing. If somebody lies, isn't that defiling a sacred thing? That oath means that you're going to tell the truth. Yes, an oath to tell the truth on the stand doesn't mean that. But given the context, given the additional commentary, I think that there was a spin on that word. And in over the 20 years that I've practiced law in the appellate court, I've never read or heard a prosecutor use the word desecrate, an oath. Instead of lie or perjure, I think there's an element of an evocation of something sacrilegious there. That coupled with the other comments relating to their inability to know if he really could, you know, if he really testified. And also the fact that he came to this country to rape women, the argument that the prosecutor made. That was an argument that was not based on the evidence. In fact, Mr. Fondi explained why he came to this country and the evidence doesn't support the state's position on that. I want to just confirm, you're saying there was no evidence whatsoever nor any facts given for which somebody could make an inference that he came to this country to rape women. That is correct. He testified that he came to this country because he was being targeted by terrorists in retaliation for having helped the U.S. Army in Iraq. He said that he came here, he got a full-time job in a pharmaceutical factory, and he was taking college courses. So in no way did he say that he came to this country to rape women. There was no other evidence, not even from him, but from anybody. But from anybody, no. These alleged incidents occurred in 2017 and he came to this country in 2015. So there was a two-year span in which he was going to college and getting a job. And that is why the state's argument is not based on the evidence. What about his statement that follows that? He came to this country for you, meaning the jury, and for the judge? Yes. What's your response to that? I think it goes again to show that the prosecutor was eliciting his immigration status when mentioning that he came to this country to rape women, which dovetails together to show that this was an ethnically charged commentary that alludes to the stereotypes of Middle Eastern men, that they're violent generally and violent specifically towards women. And again, we have to take all of this in context. The jury just heard him testify in Arabic, knew that the interpreter spoke Arabic, and it's well documented that there is a stereotype associated with Middle Eastern men along those lines. So all of these arguments coupled together, specifically that he came for you, the jury, and the judge, and he came and he desecrated the oath, all collectively challenge the integrity of the judicial process in this case. And we can see that prosecutorial misconduct often doesn't rise to the level of second-pronged plain error, but in this case it does because it relates to a constitutional right to an impartial jury and the reputation of the judicial system here. So those are the reasons why this court should review this issue under second-pronged plain error. So, Ms. Rubio, give us some of the other facts, because that was your third argument. Your second argument is that they argued facts that were not in evidence. Give us those facts that you believe prejudice was offended. Sure. And I think that this argument also is connected to the argument relating to the prosecutor's rebuttal, closing improper rebuttal, closing arguments about Mr. Afandi's coming to this country to rape women, because in closing they also argued that Mr. Afandi pushed his penis in J.C.'s mouth as she was grinding her teeth and was pushing his penis into her mouth as hard as he could. And that was a misstatement of the evidence because J.C. testified that he rubbed, touched, and put his penis on her lips or near her mouth. And that's all the prosecutor had to prove in this case based on the charges. And so that's all the prosecutor had to argue. But the prosecutor took it a step further and argued that he pushed his penis into her mouth, which is just not factually supported by the evidence. So you're saying that the word into is wrong? It should have been onto? Yeah. So the problem is that she said into rather than onto. She didn't even say into. She never said in. She said rubbed on. Rubbed on would be fine. Rubbed on, touched, and put penis on lips or near her mouth area. What's wrong with that under what you just said? There was no testimony that she never alleged that he put his penis in her mouth or into her mouth. I didn't hear the word in. I just said you said on. Right. But the prosecutor argued that he was pushing his penis in J.C.'s mouth and he was pushing his penis into her mouth as hard as he could. Yeah, but let's get to some of the things that because that issue is a real close one. I mean, in terms of whether or not that was prosecutorial misconduct using the word in versus on. But what's some of the other evidence that you believe that they argue that the word not in evidence? Some other things that they argued that were not in evidence. I don't I don't have any other specific facts that were not in evidence that I could surmise other than he came to this country to rape women, which is not in evidence. And he put his penis inside her mouth, which was also not in evidence. And those two misstatements of evidence, while not while the into or in comment may not alone be enough to find prosecutorial misconduct here. It worked in a way that dovetails with the other argument that depicted him as a violent Middle Eastern man. It made his actions sound much more forceful and much more violent than even the complaining witness testified to. She never said he was he was pressing anything into her mouth as hard as he could. So those those comments collectively depicted Mr. Fani's conduct is much more egregious than even the complaining witness testified to. If we go back to the 1st argument thing that you mentioned here during this hearing about the definition of reasonable doubt and the problem with you believe that they overstep by defining it. Help us what your concerns are there. Sure. The prosecutor when referencing the reasonable doubt standard in rebuttal said that it's not guilty beyond any doubt. That is not guilty beyond the shadow of a doubt. And but it's a burden we meet in courthouses throughout this country, the state and the county. Now, what's the problem with that? What's what's the real problem with that statement? Well, I think people versus Berman is helpful for this analysis, even though the court found that it wasn't reversible error. In that case, the court did find that that very similar commentary in that case was improper because by saying by saying what the reasonable by saying what they did not have to prove, they were defining defining reasonable doubt by what it would not. And I think the same analysis applies here. And courts have found that you should not the state should not be emphasized its burden of proof. And here, I, I contend that the state's arguments did be emphasized the burden of proof saying, oh, we prove this all the time in this country and in this state and in this county. And it's not, you know, again, defining it by saying what it is, not any shadow. The state says that it doesn't require us to prove guilty beyond all doubt. You believe that that would be diminishing their burden. Because I did. It's beyond a reasonable doubt. Right. Well, they said not not guilt, not guilty beyond any doubt. So, the, the flip side is that they that the jury would have to find to to equipment or funny. They would have. All doubt or. That they would that they would be finding guilty beyond any doubt. It's not guilty beyond a shadow of a doubt. The courts have been clear that in Illinois, at least the reasonable that standard shouldn't be defined to the jury. It's up to them to decide what reasonable doubt. And so it's inappropriate for the state to. To define it to this jury, so you want to come back to your, your last argument, anything else you want to say on the last issue about the comments, the inappropriate comment that you're referring to. Sure, I would like to touch upon a few of the state's arguments in their brief. Relating to this being acceptable response to defense counsel's closing argument in, in closing argument defense counsel argued that he came that Mr. funny came to this country after escaping a terrorist attack because of the jury and the right to a trial by a jury and. And this was not an invitation to the state's inappropriate closing argument only. An inappropriate closing arguments can only be invited by other inappropriate closing argument and here defense counsel's comment was. Both actually and legally correct Mr. did testify. To coming to this country after being threatened by terrorists and legally, he is entitled to the same rights as all other US citizens. So. The defense counsel was just reminding or explaining to the jury. Mr. is entitled to those. So, there's no way open the door to the states. Inappropriate closing arguments, eliciting and invoking these stereotypes. And then the state also argued that that Mr. injected his ethnicity into the case himself. And it was an attempt at during nullification, but as I've already explained. But his ethnicity was a prominent feature in this case, even before he testified, the judge was concerned about it ensure that the jury wouldn't hold it against him that he needed an interpreter. The interpreter was used throughout the entirety of the trial. And the witnesses, the state itself, elicited testimony from the witnesses that Mr. Had a thick accent.  This. In no way did Mr. inject his own ethnicity into the case. It's like saying a black person inject race into the trial by the color of his skin. It's just, it's part of the trial. So, in no way did Mr. invite or, or cause the state to make these comments. I think your time's up. Do you want anything further? You want to say, just to conclude, Mr. right to a fair trial was denied and the integrity and reputation of the judicial process was challenged in this case, requiring a reversal. Thank you. Mr. Thank you. Thank you. Good afternoon. Counsel. Good afternoon. On behalf of the people of the state of Illinois. I want to start by saying, if ever a case justifies enforcing procedural default and forfeiture, it's surely this case. The defendant is attempting to benefit from his own inaction, waiting until appeal to brand the prosecutor bigot. Okay, let's stop the rhetoric. Let's stop the rhetoric.  Okay. You say this is the case. Okay, let's look at that. All right. What, let's go to the issue. Let's go right to the issue of what was said. And you say, if I'm not mistaken, that it was appropriate for the prosecutor to say in rebuttal. That. The exact language. Are we going to get right to the narrative? Would I be able to make an argument? You can make it, you can make it, but your rhetoric is like in your brief. Tone it down. Okay, this isn't the, you know, the one. Okay. I don't think that the fact that years of doing this, your honor, I've never seen such an outrageous, unfounded claim that's been manufactured on appeal. So, I do think this is a case. How was it? How was it manufactured? It's manufactured because the entire in either the defendant's opening brief, nor his reply brief, does he talk about context? Actually, he mentioned context in his reply brief, only to say that the reason that he left the defense closing argument out of his initial brief, because it was not necessary to the statement of facts. I think that's absolutely false. The Supreme Court rules expressly require that all the facts necessary to the claim be included in the, in the brief. And that's why if there's a certain indignation that comes out in the state's brief, it was, it was intended. This, and it's clear what the obvious context was, and I use the word obvious because the defense attorney used the term came to this country, no fewer than by my house seven, maybe eight times. And for the defense, for the state's attorney to say, well, he came to this country, you can use the word sarcasm, or the word that I use, it's rhetorical. You also used the word sarcasm. I did, yes. Sarcasm, rhetoric. Let's go back a second. I'm really confused about your statement because on page 11, the corrected brief and argument were defended in appellate. Right at the top of the page. It says the, the, the bold heading. The prosecutor encouraged the jury to discriminate against Mossad Hafandi by arguing and rebuttal, closing that he came to this country from Iraq in order to rape women and to desecrate our oath. Overt ethnic and religious discrimination like this cannot be tolerated in our courts and requires reversal. The prosecution also misstated the reasonable doubt standard in the stated evidence. The next line is the prosecution encouraged discrimination of Hafandi of the right to an impartial jury. Can you please explain how this is? You're reading from the defendant's brief. So, I'm reading, I'm reading from corrected brief. Yes, the defendant. You're right. That's the defendant's heading. It says the prosecution encouraged discrimination. That's an argument that counsel should make in the motion for new trial or an objection. No, no, no, no, no. Let's talk about second prong. Okay. It doesn't. If it's not in, we know that. Okay. She's conceded that you win that argument. It was not objected to. And it was not in their post trial motion as such. Okay. So you, you won that argument. Right now, you know, there's a second front. Correct. Of course. Okay. So we're talking a second front. So tell me what is it that's a brief that the surprise do so. You just told me that, you know, this is what we've seen in 28 years. You're right. I mean, there are cases are legion that defendant doesn't get to wait to appeal to come, come up with the most noxious interpretation. I mean, there's countless cases. Okay. Now, the question becomes, because they didn't raise it. Okay. The question is that for us to decide, is it does it come under the second front? Now, they made that argument in their brief. They have to show error to begin with. That's right. Okay. So let's go to that. You're absolutely right. So, so you say there was no error. Correct? Absolutely. No. Okay. So, white hat tells us that a great case white hat just came down last year when you try to inject race and you try to cherry pick phrase out of forget the whole context and Suzuki and husband and all these cases. You don't get to focus on isolated remarks in a vacuum. Okay. But we're talking about this case. Okay. And in this case, it's the prosecutor said he came to this country to rate women. Now, you're saying that's an appropriate thing for this prosecutor to say, is that correct? It's a snarky, rhetorical, sarcastic. Okay. How is it sarcastic? I gave you the definition of a sarcastic. It's sarcastic. It's, it's using defense attorney's closing remarks and closing arguments against him using his own words that he is numerous. Did he say he came to rape women? Does that in there? It's rhetorical. No, no, no, it's not rhetorical. He said, is there any evidence or anything that could be inferred from the evidence that he came to this country to rape women? Is there yes or no? And then you can explain. Is there evidence that he came here for that specific purpose? Yes. It's a proper response when the defendant himself explains his own, why he came to this country, you know, for the oath for our civil rights and our rights. Because why? I don't understand. There's no evidence. He came here. He said, because his life was in danger in 2015. Now, you need to have evidence, right, in order to make a statement in rebuttal or in closing. There has to be something to put your head up. What is the hook? I'm sorry to interrupt. Go ahead. No, go ahead. Well, I think the jury, a common sense jury could understand that this was a snarky report is what it was. He got on an airplane to come here and rape one. Wait a minute. Let's look. The statement was, he came to this country to rape women. He came to this country for you and for the judge. And then he took that oath and he desecrated. Now, taking that statement together, you say that's snarky. What is snarky? What's your definition of snarky? Snarky is a little attitude, a little edgy, a little invective. Oh, it's an attitude. Would it be appropriate to say this, if somebody came from Los Angeles to Chicago, and because they moved, and then you could say, well, they told us they used to live in Los Angeles. They came here to rape women. Would that be appropriate? Well, Judge, you're forgetting the context. You're removing the defense law. Entire theory of the case is a closing argument. That's different. If I could just step back and quote your Honor on the statement. I'm looking at the context, because you keep saying that they opened the door, right? So, if they opened the door, they must have said something. Open the door has connotation to invited error. The invited error doctrine in opening the door has nothing to do with this case. This is a closing argument that needs to be reviewed in context. And it needs to be reviewed in the context of the entire closing argument, including the defendant's closing argument. We've read it in context. What is it in context? I'm still trying to figure out. You have a lot of adjectives and words that describe this, but tell me what is it in context. The defendant's closing argument, number one. What is it about the defense? If I could be indulgent. If I could be indulgent and ask the court a question. May I? No. I want you to please be specific. Go ahead. The defendant's closing argument is the impetus for that remark. What is it about the closing argument? What is it? You've said that three times. What is what? What is in the closing argument that gave it the impetus? Let's see. It goes on. I mean, I can read it. Millions and millions of people, including people in this courtroom, have some ancestor, or maybe themselves, decided to come to this country. Why did he come to this country? He came to this country because of this. He came to this country because of you. He came to this country. He repeats that phrase, came to this country, seven times. And he also talks about he came to this country for the civil rights protections, including the rights of a jury trial. That was the impetus for the snarky, rhetorical, sarcastic retort. If the defendant wanted to make this argument that that was actually a thinly veiled telegraph of a racist, xenophobic, or bigoted remark, he needs to make that in the trial court. And that's what this court made perfectly clear in Sagan, your Honor, Arthur Sagan, and in the Whitehead case. I believe it's Whitehead. Where the silence in the record is deafening. Actually, it's not deafening. It's dispositive. When you make an argument like this, the silence in the record, that no one else took it that way. No one. Not a defendant's attorney himself, not the judge. No one said anything. So it's not raised below, and there's a reason it wasn't raised below. So all of this, what has come out on appeal now is free the defendant to characterize this in the most malicious, mean-spirited way that he can possibly do so. And ask this court to review that in isolation and in a vacuum. And my point is that you can't do that. And I did point out, and I think it's shocking, I'll repeat it, that all this is not in a defendant's opening brief. I don't understand that. Please, please explain. The function of closing arguments. What is not in their brief? You say all of this. You talk in these broad terms, okay? You don't get very specific. What is all of this? The defendant's closing argument, number one. The whole argument. And his reply brief says that's unnecessary. It has no relevance. You need to review the state's closing remark in isolation, which legions and legions of cases say that's just not true. So let's say we do. Let's say we look at both of them. So we look at both of them. What is it? You say the whole argument, or just what you read? That's what you read. That's the crux of it. That they were saying they came to this country, but didn't say they came here to rape. There's no evidence of that. Again, Your Honor, this is how it's snarkiness, okay? Are we going to be the speech police? And the appellate court has said, no, Justice Steinman has said this over and over again. We're not the speech police. And this claim is based solely on allegations, terrible allegations, for the first time on appeal. And I'm a little troubled that the court is automatically going to the merits of this issue without addressing it based on existing case law. No, we are addressing it, but unfortunately you don't want to address it, because what I said is you won the argument that the only way they can win is second trial, okay? And second prong means it wasn't raised. So I don't understand how you say, well, we can't get to second stage. We can't even consider it. Even though you won the first argument, okay? You've won it. So if they don't get second stage, they don't win, right? They have to show error. They have to show error to begin with. Right, they have to show error. That's what we're talking about. It's a matter that you don't reach the issue. You honor the procedural default. You say we're not going to accept the defendant's post hoc belated claim that this is a racist thing to hit a remark. Why? Why can't that be? I don't understand your reasoning. Because there's no error here. Oh, there's no error. So it's appropriate. So you say it's appropriate. You're saying it's appropriate. Okay. So you don't have any concern that this has anything to do with prejudice, bias, not at all, correct? The only way that's coming up is through the defense on appeal. So the judge didn't find below, defendants alone, lawyers below didn't find any bias or xenophobia, racist. I have no problem with all this. Who has no problem? Who has no problem? The attorney, the litigants below, including the defendant's own lawyer and the judge. That's the question. You know, that's what happens in these cases, isn't it? Because if they knew it below, it would be there, but they didn't. Okay. So what you're saying is you don't like second prong. You don't like second prong. We have second prong. Okay. So you have to live with second prong. So the question is, as you said, I totally agree with everything you're saying. So I'm trying to get into your argument is that you say there's no error. Okay. That's the issue. Am I right? Correct. Okay. So you say there's no error. And so it would be okay. When is it okay to say such a thing? Okay. I want to know, when would it be okay to say a statement like this? Any time? I mean, what is it that would do that? I think your Honor is accepting the defendant's premise. No, I'm not. Let me ask you the question. The remark was not race-based. The remark was a report to the defense counsel's use of that term numerous times. The fact that he came to this country? Because he came to this country, that allows you to get into that he came here to write. Is that your position? The context of that remark. Context is everything. Context is part of it. The quantum belief that he came here to rape women is because he's a Middle Eastern descent. Everything else came from this internet research and Google search and the Supreme Court's information about racism and xenophobia. That's all generated on appeal. And that's created that sort of… You generated stuff on appeal. Okay? So, wait, wait. Hold on. I would like to get back to forfeiture, Judge, because you have to make these claims in the trial court. You don't get to raise… You lost that argument. You won. You lost the argument in that you've already won that. We've said they didn't do it in the trial court. We're on the second front. Now, you said, I'm quoting from your brief. You said that the next step of the analysis, so you know there's another step and you acknowledge it, is to determine whether the defendant has shown the error was so serious, it affected the fairness of the trial and challenged the integrity of the judicial process. Okay? Is that correct? And the only way you can do that is by making this outlandish claim that it was race-based and cuneiform. That's how she makes it second pronger. Okay, so you don't believe it's race-based. She doesn't get to do that for the first time on appeal. What's wrong with doing it on the first time on appeal? I still don't understand it. That's called second prong. Second prong is always going to be first time on appeal. So, Phillips, Martinez, all these cases, that the defendant doesn't get to forfeit it, not raise it at trial, and then assigns to it the most malicious, most damaging interpretation on appeal. That's binding case law, Judge. No, no, wait a minute. Wait a minute. If somebody makes a statement, you said to look at the context. Is he Middle Eastern? Is he Middle Eastern? Yes. Did he speak with an accent? Yes, he was from Iraq, correct. Did he speak with an accent? Yes, he did. And he came to this country? Yes. And so when you say somebody came to the, not you, but the prosecutor said, came to this country to rape, and not only rape these women, but rape the judge and the jury, he came for you, and the judge, that's what she said. He didn't say anything about raping the judge or raping the jury. What do you mean? He said, she said, he came to this country for you, and for the judge. Isn't that correct? What he's referring to there, and I think counsel would agree with me, that he's referring to the civil rights protections that we have. Wait, wait, wait, wait, what? Give me that again. He came, the civil rights protections. You lost me. Let's go back to the quote. So, the prosecutor said that he, he targets women, and she said, he came to this country to rape women. Then the next line, the next line is, he came to this country for you, that means the jury, I assume, correct? He came for you and the judge, meaning the jury trial, the right to a jury trial, and the protections that we have. I think counsel would agree. No, no, he came to the jury for you and the judge, and then he took the oath, and he desecrated. What do you mean he came to the jury for you? I don't understand it. Okay, well, this is not, I think you're, okay. The defense argument, after saying all those things about why he came to this country, he came to this country to this, he came because of the judge. He came to this country because of you, meaning the jury. So then the response, part of the state's response is that he came to this country to rape women. Then we properly respond. Obviously, he came to this country for you and for the judge, and that's what the defense attorney said, meaning the right to a jury trial, and the protections that we have, and he took the oath to testify truthfully, and he desecrated. That's your interpretation. He didn't say anything about raping the jury or raping the judge or I don't know where that's coming from. He came to this country to rape women. He came to this country for you is the next sentence and for the judge, and then he took that oath. And now he didn't take the oath until he testified, right? That's great. I didn't hear the answer. Yes, sir. Yes, okay. So that was after he came to this country and after the statement that he came to this country for you and for the judge, and then he took the oath. Okay, anything else you want to say? It would be a great conversation to have in the trial court, and that's exactly why we have rules of forfeiture, and if they're not enforced, they're toothless, they're meaningless, and I know this court frequently just reads this past forfeiture, and I know you're going to say I've already won that issue, but that is the entire issue is that this was not raised below, and the judge has come up with the most horrible interpretation of what was said or how it was taken. Anything else? So Mr. Harvey, the question really is whether or not this error, which I think that most people would agree that those statements were probably error, and they could be considered harmless error. The question is whether or not this error was so egregious that we need to consider it so that we can preserve the integrity of the judicial process. And that's the question, so I'll ask you to respond to that. I think that's absolutely correct, and that is sort of in a nutshell the second prong of plain error, structural error, and my argument is that it's not that, and that's because to find that it was structural error, that it was so detrimental and so damaging to our system of justice, et cetera, that's all coming from the defendant's brief. It's manufactured, and I don't hesitate to use that term. It is invented. So the maliciousness- Wait a second, you said it was invited. I didn't follow that part. Invented. I'm sorry, invented. Okay, I thought you used the word invited. I beg your pardon. That it was devised on appeal, and that's what was done here. So if this were actually how it was intended, how it was delivered and parted and how it was interpreted by the jury, if that's true then, for sure, this is terrible, but it's only the defendant that is making this argument for the first time without giving the judge a chance to rule on it, without even, the defense lawyer himself, very good defense attorney, very well known, two of them, did not say anything about this, which according to the Whitehead case, shows, and I'll use the word, which seems to strongly indicate, the defense counsel did not object, which would strongly indicate that the statement was not interpreted as racist by those who heard it. And the Whitehead case goes on. The trial judge similarly did not react to the comment. Within the context of the argument, the defendant acknowledges the comment was directed to the parties used not as race. So in this case, the remark was directed toward the defense attorney's closing argument. It's a snarky count remark to that. How do you know the jury, how do you know the jury didn't consider this other than snarky? How do you know that? Because you raised it, you objected trial and you raised it in your post-trial motion. No, it wasn't raised at trial. We know that, okay? We're past that. You keep going back to that. Okay, let's get on with it. You're asking me to ask how you find out if the jury. We can't. You have a post-trial hearing. No, we can't. We cannot do it now. We're done. That's why they raised it in their brief. You want to give the defense handcuffs for some reason that they can't raise new issues in a brief, an appeal? I'm saying they can't manufacture them, Judge.  I mean, the words you use here, not only manufactured, there's a whole list of words you use to describe it and they're all let's see. I got it. It didn't reply. Hold on. You would describe it as outrageous,  contemptible,  contorted, concocted, absurd, seditious, duplicitous,  and vitriolic. You also say that they attempted to dupe the court, this court, in engaging in gamesmanship.  Oh, and that they also accused, the state also accused Al-Fandi of obfuscation and fabrication and provocation. So, okay. I understand you don't like it, but we don't know how the jury reacted to this. We don't. And that's because there is a system in our country and in our state that if something is so horrendous and the question is, does this reach that standard? Okay, that's the second problem. It goes right to the process itself. And you use all these words and all you can say that it was snarky? I would wonder why the defense, the defendant, this is not personal, this is the defendant, because the defendant speaks to his attorney. Why the context was omitted. The context was omitted, I would submit, as a deliberate effort, and the word dupe comes from the rule case, where there was a statement of fact session, the defendant's brief was so woefully inadequate. It's as if you're filing a brief and somebody leaves out like the most damning evidence. Well, the appellate court's going to ridicule the attorney who wrote that brief if the defendant challenges the sufficiency of the evidence, for example, they left out the fact that he confessed. That would be a glaring omission. The analog in this case is the glaring omission is what the whole impetus for this remark, whatever, the whole thing that spurred it on, spurred it, which was the defense, the entire theory of the case and jury nullification, and his closing argument where he used the term came to this country. That's just that needs to be front and center. Case law says that context is everything. So and that's so having omitted that is the defendant on appeal liberty to characterize it in the most malicious way that he feels in a way that suits his claim. And that is not what the law says. So I understand that. And I agree with your honor that if there is this blatantly overt racist remark or whatever, in those cases, the defendant cites like Sanders and I believe it's Bucks, which she what she claims are similar to this case. There's no analog whatsoever. That was race was front and center in that case. And the Sanders case actually tells us that the defense doesn't get to make race an issue. And they did in this case. And the state didn't object, which is fine. It doesn't mean it doesn't mean it was appropriate. How did the defense make race an issue? Tell us how. Well, it was key. It was a city jail. Let me stop you for a second, because it's my understanding that the whole point about him coming to the country was to explain that he how he helped U.S. forces in his own country. And basically, at that point, once he gets found out, he can't stay in his own country anymore. So he comes to the U.S. to live now for the rest of his life. And that was explained to the jury at some point. So why? How is that racist in England? I don't know. Yes, I don't know that he made specifically race and ethnicity an issue. So what do you think? Then how did he how did how did he bring this up as an issue such that you believe the prosecutor's comments were OK? It was he was trying to engender sympathy for him having been an immigrant coming to this country, whether it was from whatever country. But then the prosecutor takes that empathy away when he's trying to make that  And I'm just going to read a reading from your brief, by the way. I'm starting at page 17. A fondie is a serial rapist. It is who he is. It is what he does. He rapes women. He prays on women. He targets women. And then he becomes the worst nightmare. The defendant got on the witnessing and I don't know what that was. But what I think he testified, he said something. It was hogwash. He came to this country to rape women. He came to this country for you, for the judge. And then he took that oath and he desecrated it. He lied to you. So how do we get to those statements if we start with where you want to start, which I understand why you want to start there, that he started by telling us how he came to this country. But then we get to this whole thing about he came to rape women. He came to this country for you, for the judge. And then he took the oath and he desecrated it. I just don't know how we got there. So help me. What he said got us there. I guess my response is that this is, and I said it earlier, I used the word snarky and sarcastic rhetorical. I used the word snarky and sarcastic rhetorical manner of speaking. Using the defendant's, excuse me, defense counsel's own words sort of against him, if you will. Being sort of clever. But doing that did not sort of warrant the automatic assumption that what the attorney is telegraphing is that he's a Middle Eastern person, he's Arabic, that he's from a foreign country, that all this, you know, is xenophobic. Those are, none of that was part and parcel of the remark. And my argument is that it was not even telegraphed. It wasn't sort of implied. It was just the attorneys using the defendant's defense counsel's words to build off that theme and response. It wasn't. And so now, right. So now the question for us, though, and we agree with you that this was not a post-trial motion, there was no objection during trial. There was no post-trial motion addressing this issue. Possibly ineffective assistance of counsel. That's not the issue that we're talking about right now, but possibly that's what's going on here. So now the issue comes before the appellate court. And the issue is being raised to the appellate court, not by the attorney who tried the case, but by appellate counsel. And the appellate counsel now sees that, oh, well, there's a problem here because this issue should have been raised. So we're asking the court to review it under second front plain error. And under second front plain error, second front plain error, the question for us is whether or not this alleged error was so egregious that we need to consider it to preserve the integrity and the reputation of the judicial process. That's the question for us. And I think that's where just this time it's trying to take you. But I think what's happening is that I think just the time it is there already. So he's not he's not taking you there. And I think you're you're you're you're kind of what happens in your brief a little bit is that you went too far by saying that, oh, how bad that it was for them to even raise this. You're saying you're taking a position that it was just terrible, terrible, terrible, ridiculous that they're even now raising this. And I don't think that's appropriate either. So I'm just trying to bring us somewhere in the middle and get you to properly respond so that you're not so upset by the question. I appreciate that. I do. And I do acknowledge that my brief was was rather forceful. But I think it was I stand by it. I stand by it. And here's why. Because. When you said when the defendant recognizes or identifies something on appeal, say, hey, there's a problem here. I see an issue. The point I have is that it's only it only became an  Because of the way that the remark is now being construed in retrospect, without the benefit of the tenor of like the attorneys, the way it came across, the way it was intended, the way it was received. That's all. There's silence in the record on that. And the silence would indicate that it's sort of the opposite. They refused to claim that it had this sort of horrible, reprehensible, racist meaning. The failure to object is itself refutes the claim, saying, so there is no problem that I identified or should be identified. Because you're going back, though, and this is what just the time I was trying to explain, but I think you all were not meeting my that we're past that already. We agree with you that there was no objection at trial. That's a problem. There was no post-trial motion. There's a problem. We agree with you, but you keep going back to that. We're telling you, you went on that. But now the issue is whether or not this court needs to consider this particular information to determine whether or not this error was so egregious that we need to consider to preserve the integrity and the reputation of our judicial process. That's where we are right now. And that's what we're trying to discuss with you. We don't want you to keep going back telling us that there was no objection. We know that, and we know... But I'm not saying that. What I'm saying is, like you said, you just said, Your Honor, whether or not this error was so egregious, et cetera, et cetera. I'm saying there was no error to begin with. That's my point. I'm not rehashing the case. I'm just saying there was no error. There only... I should say more accurately, there is only error to the extent that the defendant just sort of said so. Well, no, because counsel explained it. She said that the reason why she's raising this is she said there was absolutely no evidence in the record that he came to this country to rape women, to abuse women, to harm women, that that was his purpose for coming to this country. And that is what was said to the jury. And now the problem that we have to resolve is what impact that may have had on the jury. If you have a jury of even just two women on the jury, I could see them being really concerned about that, maybe not properly remembering the evidence, but hearing the prosecutor introduce information that was never in evidence. And that's... So they have argued. Counsel argued it today, even in oral arguments. She does argue it in her brief. And to the extent that it was based on the evidence, and again, I'm not going to repeat that. I thought it was just a snarky comment. It was a choice of words. It did not have the implication that the defense is trying to assign to it. It didn't... There was no telegraph. We have to make this a thing about race. Our opening argument would have been centered on that. Of course it wasn't. But that he came here to rape a woman, and he was a serial rapist. And I know that's sort of a part and parcel of the claim, but calling him a rapist, a serial rapist, if the evidence supports that or inference of the evidence, at least three cases you've got J.C. and... You're saying something different. You see, you're saying... And I'm sure you do realize this, but you're saying something different. The prosecutor argued at trial before the jury that he came to this country for that purpose. And that is not in evidence. We've read the record. There's nothing in the record that justifies saying that that was the reason that he came to the United States so that he could rape women, torture women and so forth and so on to women. Go ahead. I'll listen. Well, I think you're taking it at face value. You're saying that that's the reason he literally got on the airplane to come here, and that's not what you said. No, I'm not saying that at all. I'm not saying that at all. That's what the prosecutor said. I'm certainly not saying that. The prosecutor said that during the trial, during closing arguments to the jury, and that was not in evidence. That's what Ms. Rubio's argument is right now. I guess my point is that it was not meant intentionally, and you can say that that's what the defense says now that it was taken literally. He came here to find women and rape them. This is a manner of speaking, and also this is something that has to be...  You're saying that this is an appropriate way for a prosecutor to speak? Do you agree with that? You just said that. No, you're misunderstanding my  My argument is merely that the trial attorney was seizing a refrain that had been repeated seven times. That's not why he came to this meeting. Okay, that's fine. There's nothing wrong with that. How many times has the jury informed that closing arguments are not evidence? Of course they know that there was no evidence that he got on the airplane to come here and find women and rape them. You know that if you make an argument on the basis of the evidence, that's not correct. Now, the fact that she used a refrain, there's nothing wrong with it. Nobody has criticized the use of that refrain. It's how the refrain was used. Now, you just said that it may not have been intended that way, and let's say we agree with you. Let's agree. Let's agree. I don't know if it's intentional or not. Let's say it was not intentional. Does that make a difference? Of course it does. Because that's the whole tone and tenor that's absent from the  How do we know it was intentional or not? Because we don't.  Do we? Intentional. Either intentional or it was made not in order to be bigoted or anything like that. It just came out of the mouth. People say things that they don't know.  As a snarky rhetorical remark. No, no, no. You put the word snarky rhetorical in it. I'm not putting those words on it. I'm just saying that the words are there. All we know are the words. And it may not have been intentional. I agree. We don't know. And that's the problem. We don't know what it was on the side of the prosecutor. And you can't tell me whether the jury thought of it consciously or unconsciously. We don't know either way. So we have to use that as part of the context. So it all goes down to the words used. And which are much different than the Whitmore case you keep coming up to where there was a Whitman or whatever the case from 2022 with the word boy. It's a much different case. That's not here or there. The question that we have to deal with is, is that statement prejudicial? And we don't look at intent. We can't. We don't know what the jury did. We don't. And you say, well, we don't even get there. But we're there with even under your brief with the second probe. So that's what we're trying to look at. That's all I'm trying to get you to say is, where does it go? Let me ask you a different question. It's a hard question. I'm telling you in front. I'm giving you a hard question. And if you want to think about it a little bit, I'll give you a few seconds. But this is a question that judges have asked. So you, I know, are a very good and highly experienced and respected prosecutor. You've done this a long time. So has Ms. So let's just change seats. If you were in her seat and you represented him, what argument would you make? You know, I've thought about this, Judge. Funny, I mean, funnily, I don't know if that's a word funnily enough, I would have filed an Anders brief. That's what I would have done. And I know that and I'm biased. Of course, you recognize that I've been doing this for over 30 years. That's a very good answer. I got to give you credit. I got to give you credit. That's a very good answer. It should have been Anders. That's what I would have followed. And I have thought that's why that rolled off my tongue, because I would not have. And I mean no disrespect to this review. I honestly, as God is my witness, I don't. The defendant speaks to his attorneys. So everything here is directed at the defendant, not counsel. We have a terrific working relationship. I want to make that very clear. But I wouldn't. And I use the word manufacturer. And it should have been an Anders brief, because if you don't assign to it and do all your research and find how terrible and awful these disgusting stereotypes of Middle Eastern men, that was that being raised and generated and stirred up on appeal. I would have recognized that case law does not support this claim, and it certainly doesn't support the claim regarding the penis to the mouth. Again, that's reviewed in isolation. The prosecutor's whole closing argument actually admits he didn't get it in, but it wasn't for a lack of trying. He wasn't able to penetrate, but he tried to. And it was in the context of that was penetration, however slight. So it doesn't have to go into the mouth. And that's the whole tenor. That's the entire closing argument. So that issue was entirely without merit. It was based on the evidence. And the state did not define the reasonable doubt standard. It did exactly what was sanctioned in the Moody case, in the cases that Moody cites. So I would have recognized that those two claims are out, and this claim required imagining the most reprehensible interpretation. And I wouldn't erase that because it's barred by Brooks and by Phillips and Camacho and DeCristoforo and Martinez, all these cases that say you can't just come up with the most damaging interpretation and define it, especially something as serious and potentially career-ending as this. And that's what I would have done. But I'm not attentive. I appreciate your response. I really do. We're out of time. So if you would just summarize. Yes, sir. So for all those reasons, for those stated in our brief, I'd ask you to affirm the defendant's convictions. I don't think, and I would like to get in front of this, that this is something, well, we don't know what happened. In the event that this court wants to send it back for a hearing or remand and retain jurisdiction, that is totally inappropriate, has no, and I'm not saying that the defendant didn't ask for this. So it's not something that the defendant has asked for. The defendant is just asking for outright reversal in a new  But to the extent that this court would consider remanding it as if this were an unresolved issue instead of a created or manufactured one, if the defendant wants to make this claim, it has this constitutional argument, and it is constitutional at its core, structural, due process, you name it, every constitutional claim, that it needs to file a post-conviction petition. It needs to support it. The affidavits from whoever, from the child counselor, whoever. So I'm asking this court to reject all three of its claims and deem them forfeited. Thank you. Thank you. Ms. Rubio? Yes, thank you. I have a few points to make. In terms of the allegation that I omitted context, the statement of facts has to provide all the facts necessary for the claim that is raised. In my opening brief, I wrote, in closing, the state focused on J.C.'s testimony and the defense focused on the reasonable doubt standard. Those were, that was a summary of the opening closing arguments. And then I went into detail about the rebuttal closing argument because that, those were the facts necessary for me to raise this claim and for you to review this claim according to the case law, which says that this type of conduct is not invited by proper closing arguments. So my recitation of defense counsel's closing argument was irrelevant to my claim and it's the state's job to come back and say that this claim was invited and that's what they did. In terms of whether the state attorney did this intentionally or not, as Justice Hyman said, we don't know, but it does not matter because the, what matters is the result. And the case that I relied on, People v. Sanders, goes to show that. That was second-pronged claim error of ineffective assistance of counsel. Counsel himself intended to elicit racial information or mention racial information in closing argument and the court held that that was inappropriate, excuse me, it wasn't second-pronged claim error, but it was ineffective assistance of counsel even when counsel intended to elicit it. So whether or not counsel, defense counsel, objected or didn't object, whether counsel intended to waive objection to this, it doesn't matter. The end result is that Mr. Fondi, his right to an impartial jury was affected by this. And just relating to whether or not I should have held an Anders, Mr. Arbeck writes that he is biased and as a defense attorney so am I, but anecdotally I've spoken to numerous attorneys who are defense attorneys and everybody's agreed that these comments were inappropriate. I stand on my position in this case that structure. You don't have to defend yourself. The question was just to hear what he had to say. That was his position. Right. And finally, with relation to tenor or tone, it's true that because it wasn't objected to, we don't know. We don't know what the jury might have been thinking. We don't know the tone. We don't have a recording of it. But that's always the case in second-pronged plain error cases. On appeal, we never know the tenor or tone and that has never stopped the court from finding that a structural error occurred in circumstances like this. So if this court has no further questions, we ask that it reverse Mr. Fondi's conviction and remand for a new trial. Thank you very much. Just in closing, I just want to remind everybody that just as Johnson is on the Zoom, I'm not in here or see her, but she was here. And secondly, I wanted to thank both of you. I think we asked a lot of  You both did very well in handling them. And, you know, the give and take of oral argument, I think both of you are after 20 and 28 years respectively, you handled yourself very well, both of you. So thank you very much. Appreciate you giving us a lot to think about. You really have. So we'll take it under advisement and have a good afternoon. Thank you.  Thank you.